DONALDSON, Judge.
Minda Garcia Chapman (“the wife”) appeals from a judgment of the Jefferson Circuit Court (“the trial court”) divorcing her from Christopher Chapman (“the husband”) and determining the custody of the parties’ child. The wife challenges the trial court’s judgment insofar as it (1) did not order the husband to pay child support, (2) was based on findings of fact that allegedly are not supported by the evidence, and (3) awarded attorney fees to the husband. We reverse the trial court’s judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

Background

■ On July 31, 2013, the husband filed a complaint for a divorce alleging adultery of the wife and incompatibility of temperament as grounds. The husband stated in the complaint, among other things, that he and the wife1 were married in September 2005; that the wife had a child from a previous marriage; that one child, A.C. (“the child”), was born of the marriage in March 2008; that the. wife had committed adultery; that, while he was working in another country, the wife became pregnant by a paramour; that the wife failed to pay household bills while he was working in another country; and that the wife and the child had left the marital home to live with the wife’s páramour. He sought custody of the child and an award of attorney fees. The wife filed an answer denying the allegations in the husband’s complaint and a counterclaim for a divorce alleging that she was the primary caregiver of the child, that she was pregnant with another child, and that there was incompatibility of temperament between the parties. She also requested, among other things, sole custody of the child, subject to the husband’s visitation rights, and an award of attorney fees. The record shows that the wife gave birth to her third child in December 2013 while the divorce case whs pending.
On March 23, 2014, the trial court entered an order appointing a guardian ad litem for the child and requiring each party to pay $750 toward the, guardian ad litem’s fee. On April 2, 2014, the husband filed a motion seeking an order requiring genetic testing of the child born to the wife in December 2013. The trial court granted the husband’s motion. The husband was ordered to pay the expenses for the genetic testing. The order also required the wife to reimburse the husband should the results of the testing reveal that he was not the father of the child born in December 2013. The testing showed that the husband was not the biological father of that child.
On August 29, 2014, the trial court entered a temporary order (“the temporary order”) providing that the parties were to share joint legal custody of .the child and granting the husband “primary physical custody” of the child during the pendency of the divorce case. The trial court, however, ordered that the husband would have custody of the child during /‘the first and third full weeks of each month from 9:00 a.m. on Sunday until 8:00 a.m. the following Thursday” and that the wife would have custody of the child during “the [s]ec-ond and [fjourth weeks of each month from 3:00 p.m. on Thursday until 9:00 a.m. the [fjollowing Sunday.” The temporary order also contained provisions for the par *341 ties to exercise specified custodial periods with the child during holidays, other special occasions, and the summer. The trial court did not order either party to pay child support and ordered the husband and the wife each to pay half of the child’s expenses.
Both parties submitted a Child-Sup-pori^-Obligation Income Statement/Affidavit (“CS-41 form”) during the proceedings. On his CS-41 form, the husband stated that he had a monthly gross income of $3,120. He also stated that the child was covered by health insurance at a monthly cost to him of $204. The wife stated on her CS-41 form that she had a monthly gross income of $2,836.16. She stated that the child’s health insurance was provided through Medicaid.
The record contains affidavits from counsel for both parties that were submitted at different times during the proceedings in support of the parties’ requests for an award of attorney fees. On August 5, 2014, the husband’s attorney submitted an affidavit stating that, up to that point in the litigation, her fees in the case amounted to $13,875. The wife’s attorney stated that he had billed the wife $17,305 as of March 23, 2015. ■
The trial court held a trial on March 23, 2015, at which the husband and the wife testified. The husband testified that, although the trial court had granted him sole physical custody of the child in the témporary order, he had not exercised his right to that custody because it would have been disruptive to the child, who attended school’in Chilton County, to move to Jefferson County and to change schools. The husband testified that the wife had allowed him to keep the ‘ child only for a single weekend during the pendency of the proceedings. The husband testified that the mother of the wife’s paramour kept the child while the wife worked and that he had no means of contacting.the child when she was with the mother of the wife’s paramour. The husband testified that there were occasions when he could not get in touch with the wife.
' The husband also testified that, when he had worked in another country, he had sent money to the wife to cover household expenses for the wife, the child, and the wife’s older child who lived with the family. The husband testified that he had had to take emergency leave from his employment and return to the United States when he found out that the wife had left the marital home. He testified that, because of the wife’s failure to properly manage the family’s finances while he was in another country, he lost the marital home to foreclosure and that there were other debts that he had been required to pay due to her' mismanagement of finances.
The husband testified that he provided the child with health-insurance coverage. He testified that he paid for the child’s hair care and bought her shoes for school. He testified that he offered financial support to the wife during the pendency of the divorce proceedings but that he never actually provided- any such support. The husband testified that the temporary order required him to pay half of the child’s expenses for extracurricular activities but that he did not pay any of those expenses because the wife would not permit him to do so.
The wife testified that she lived in a two-bedroom apartment. The wife testified that the child had her own room. She testified that she was employed as a home-health nurse and that she worked from 8:00 a.m. to 5:30 p.m. on Tuesdays,- Wednesdays, and Thursdays, on Friday evenings, and half days on Saturday, The wife testified that she never declined the husband’s requests.to visit the child and that she never interfered with his attempts *342 to communicate with the child. The wife testified that the husband never provided her with financial support for the child. She testified that she did not provide the husband with a telephone number for her paramour’s mother. The wife admitted to committing adultery. She testified that she did not allow her paramour to supervise the child alone and that her paramour never spent the night in the same house as her. The child’s report cards were admitted into evidence, and they reflected that the child was performing well in school. The report cards also showed that the child had been tardy on five occasions and had been absent six times during the prior school year. The wife testified that the child had been sick on the days that she was absent. The wife testified that she had not provided the husband with the child’s telephone number. She testified that the husband had paid for the child’s shoes, clothes, and other expenses.
On July 1, 2015, the trial court entered a final judgment of divorce, stating in pertinent part:
“3. The grounds for Divorce are due to adultery by the [wife] who moved in with another man and had a child from this man from DNA testing.
“4. The [husband] and the [wife] shall share custody and control of the [child].... Primary physical custody is hereby awarded to the [wife].
“(a) The [husband] is awarded first and third and Fifth full weeks of each month from 3:00 p.m. on Friday until 8:00 a.m., the following Monday. The [husband] is awarded every odd fifth week.
“(b) That the [husband] shall exercise physical custody from the end of school to the first day of school.
[[Image here]]
“5. Because of the shared custodial order made in this case, and the periods of physical custody exceeds the standard neither party shall be required to pay child support to the other party towards the support and maintenance of the parties’ minor child. Each party shall be responsible for and provide for the day-to-day care and support of the child(ren) during his or her respective periods of joint physical custody. The parties shall each be responsible for and pay one-half ... of the following expenses for their child(ren); provided, however, that the parties shall discuss and mutually agree in advance as to any such expense to be shared:
“(a) Day care or after-school care expenses
“(b) Extra-curricular activity expenses
“(c) School related expenses “6. All non-covered medical expenses incurred shall be paid equally (50-50) by the [husband] and the [wife] including, but not limited to, hospital, doctor, dental, orthodontic, optical care, prescription drugs and the like.
[[Image here]]
“15. That the [wife] is hereby ordered to pay attorney fees due to the adultery finding.
“16. The [wife] shall pay to the [husband’s] Attorney, Wanda Outlaw, as reimbursement for the attorney fees and expenses incurred in this case, the sum of Five Thousand 00/100 ($5,000.00) Dollars. Said sum shall be paid directly to [the] attorney of record for the [husband]. This amount does not necessarily reflect the total value of services rendered but rather represents the appropriate contribution due from the [husband] towards those services due to the adultery finding,”
On July 21, 2015, the wife filed a motion to alter, amend, or vacate the judgment pur *343 suant to Rule 59, Ala. R. Civ. P. (“the Rule 59 motion”), arguing only that the judgment “is contrary to the evidence presented” and that the judgment “is contrary to the applicable law.” On July 27, 2015, the wife amended the Rule 59 motion to specifically challenge certain provisions of the judgment, including the custody determination, the determination not to grant child support, and the order requiring her to pay some of the husband’s attorney fees.[1] On that same day, the wife filed a motion pursuant to Rule 52(b), Ala. R. Civ. P. (“the Rule 52(b) motion”), requesting the trial court to enter an order stating its findings of facts and conclusions of law. The trial court held a hearing on the wife’s postjudgment motions on October 6, 2015. On October 21, 2015, the trial court entered an order granting the Rule 59 motion in part and amending the judgment (“the amended judgment”), stating in pertinent part:
“4. That Paragraph 4(a) of the parties’ Final Judgment of Divorce is hereby Amended as follows:
“5. The [husband] is awarded first and third full weeks of each month from 3:00 p.m. on Friday until 8:00 a.m. the following Monday. The [wife] is awarded Second and Fourth full weeks of each month from 3:00 p.m. on Friday until 8:00 a.m. the following Monday. That the [husband] is awarded every even fifth week and the [wife] is awarded every odd fifth week.

a

“8. That all other prayers for relief are hereby DENIED.”
On the same day, the trial court also entered an order granting the Rule 52(b) motion (“the Rule 52 order”), stating in pertinent part:
“1. [The wife’s] Post-Judgment Motion to Find Facts Specifically and State Separately the Conclusions of Law Thereupon, Made Pursuant to [Alabama Rule of Civil Procedure] 52(b) is hereby GRANTED.
“2. That the Court considered the best interest of the child would be served by awarding to the [husband] and [the wife] shared custody of the child....
“3. Court based the ruling upon the following specific facts:
“a. That the [husband] had obtained work outside of the United States to earn money for the family.
“b. That the [husband] had sent this money home to [the wife],
“c. After a period of time, he could no longer get in touch with the [wife] by phone, no calls were answered by the [wife] nor were calls made.
“d. The [husband] became concerned enough about the welfare of the [wife] and his child that he took emergency leave from his job overseas to find out what had happened to them.
“e. That the [husband] found the house abandoned. He finally found his wife and child living irt a camper trailer with a man by the name of Matthew Collins.
“f. Not only was the [wife] living with Matthew Collins but was pregnant. DNA testing showed that the *344 [husband] was not the father of this child.
“g. After the [husband] returned, he and the [wife] exchanged the child every other week.
“h. The [wife] has moved twice since the divorce action was pending.
“i. That the [wife] hit the child with the handle of a spoon and hit the child over the head with her purse.
“j. That the [husband] hit the child with a belt.
“k. That the [wife] has her boyfriend’s mother keeping the child of the parties. The [husband] exercised as many periods of physical custody as he had available.
“I. That the child had five tardies and six absences.
“m. That the [wife] did not provide the [husband] with a phone number to call the child.
“n. That the child had to sleep in the bed with [the wife] due to lack of accommodations.

a

“5. Though the Court considered the adulterous acts of the [wife] and her pregnancy by the paramour, it did not deprive her of custody instead it gave her shared custody as the parties had maintained during the pendency of the divorce. Also, the Court did consider the child’.s five tardies and six absences, sleeping in the bed with [the wife], not providing the [husband] with a number to contact the child, the number of times the [wife] moved during the pendency of the case as relevant factors in awarding custody of the child.
“6. That based on the aforementioned finding of facts the Court awarded shared custody to the [husband] and the [wife]. The court must make the findings required by Rule 32(A)(ii), Ala. R. Jud. Admin. Based on the shared custody, the Court did make the finding based on Rule 32 stated that the deviation was due to visitation being awarded to the [husband] was equal to that of the [wife] which is above the standard visitation schedule.
“a. The [husband] was awarded first and third full weeks of each month from 3:00 p.m. on Friday until 8:00 a.m. the following Monday. The [wife] was awarded Second and Fourth full weeks of each month from 3:00 p.m. on Friday until 8:00 a.m. the following Monday. That the [husband] was awarded every even fifth week and the [wife] was awarded every odd fifth week.”
The wife filed a notice of appeal to this court on December 1, 2015. On appeal, the wife contends that the trial court’s custody determination should be reversed in part because the findings of fact made by the trial court, on which that award is based, are not supported by the evidence; that the trial court committed reversible error by failing to grant her child support; and that the trial court committed reversible error by awarding the husband attorney fees. The husband did not file a brief on appeal.

Discussion

I. Custody and Child Support
The wife argues that the trial court committed reversible error by failing to order the husband to pay her child support and that the custody provisions in the judgment do not justify a deviation from the child-support guidelines of Rule 32, Ala. R. Jud. Admin.
This court has stated that “matters relating to child support ‘rest soundly within the trial court’s discretion, and will not be disturbed on appeal absent a showing that the ruling is not supported by the evidence *345 and thus is plainly and palpably wrong.’ ” Scott v. Scott, 915 So.2d 577, 579 (Ala.Civ.App.2005)(quoting Bowen v. Bowen, 817 So.2d 717, 718 (Ala.Civ.App.2001)).
This court has also stated that
“[t]he amount of support that would result from the application of the guidelines is presumed to be the correct amount of child support. Rule 32(A), Ala. R. Jud. Admin. This presumption may be rebutted if the trial -court makes a finding of fact that, based upon the evidence presented, the application of the guidelines would be manifestly.unjust or inequitable.”
Hamilton v. Hamilton, 647 So.2d 756, 758 (Ala.Civ.App.1994). Rule 32(A)(1) provides a nonexclusive list of reasons for deviating from the guidelines, including:
“(a) Shared physical custody or visitation rights providing for periods of physical custody or care of children by the obligor parent substantially in excess of those customarily approved or ordered by the court;
“(b) Extraordinary costs of transportation for purposes of visitation borne substantially by one parent;
“(c) Expenses of college education incurred prior to a child’s reaching the age of majority;
“(d) Assets of, or unearned income received by or on behalf of, a child or children;
“(e) The assumption under the Schedule of Basic Child-Support Obligations that the custodial parent will claim the federal and state income-tax exemptions for the children in his or her custody will not be followed in the ease;
“(f) The actual child-care costs incurred on behalf of the children because of the employment or job search of either parent exceeds the costs allowed under subsection (B)(8) of this rule by twenty percent (20%) or more; and
“(g) Other facts or circumstances that the court finds contribute to the best interest of the child or children, for whom child support is being determined.”
In Flanagan v. Flanagan, 656 So.2d 1228 (Ala.Civ.App.1995), this court stated:
- “The Commentary to Rule 32 outlines three ‘assumptions’ that have been -‘incorporated in the Schedule of Basic Child Support- Obligations.’ One of those assumptions concerns the matter of ‘Visitation.’ Under that heading, the Rule 32 Comment states:
“ ‘The Schedule of Basic Child Support Obligations is premised on the assumption that the noncustodial parent will exercise customary, visitation rights, including summer visitation. Any abatement of child support because of extraordinary visitation should be based on visitation in excess of customary visitation. ’ ■ * -
“(Emphasis added.)”
656 So.2d at 1231.
“The Comment to Rule 32 states: ‘The Alabama child support guidelines do' not specifically address the problem of establishing a support order in joint legal custody situations. Such a situation may be considered by the court as a reason for deviating from the guidelines in appropriate situations, particularly if physical custody is jointly shared.by the parents.’ ”
Knight v. Knight, 739 So.2d 507, 509 (Ala.Civ.App.1999).
The --wife argues that -the trial court granted the parties joint legal custody of the child, granted her sole physical custody of the child, and granted the husband standard visitation with the child. She contends that, under that custodial arrangement, there is no basis for the. trial *346 court to deviate from the child-support guidelines and to decline to award her child support.
After considering the arguments of the wife and reviewing the judgment, the amended judgment, and the Rule 52 order, we are unable to determine the type of custody granted to the parties. In paragraph four of the judgment, the trial court ordered that the parties “shall share custody and control of the [child]” and granted the wife “[p]rimary physical custody” of the child. The trial court stated in the amended judgment that
“[t]he [husband] is awarded first and third full weeks of each month from 3:00 p.m. on Friday until 8:00 a.m. the following Monday.- The [wife] is awarded Second and Fourth full weeks of each month from 3:00 p.m. on Friday until 8:00 a.m. the following Monday. That the [husband] is awarded every even fifth week and the [wife] is awarded every odd fifth week.”
As argued by the wife, the judgment and the amended judgment can be read as essentially ordering that the husband shall have visitation with the child every other weekend and during the summer. However, in paragraph five of the judgment, the provision in which the court stated its reasons for deviating from the child-support guidelines and for not granting child support, the trial court referred to its custody determination as a “shared custodial order.”[2] In the same paragraph, the trial court required the parties to bear the responsibility for day-to-day expenses for the child during their “respective periods of joint physical custody.” (Emphasis added.) In paragraph five of the Rule 52 order, the trial court stated that the parties would maintain “shared custody” of the child in the same manner that they had under the temporary order. The temporary order granted the husband “primary physical custody” of the child. In paragraph six of the Rule 52 order, the trial court again stated that it had granted the parties “shared custody” of the child and that it had granted the parties equal visitation time with the child.
The judgment, the amended judgment, and the Rule 52 order contain inconsistencies and ambiguities regarding the issue of the physical custody of the child and the amount of time the husband will exercise visitation with and/or custody of the child. Because we are not able to determine the trial court’s intent regarding custody of the child, it follows that we are unable to determine whether the trial court incorrectly deviated from the child-support guidelines. Therefore, we reverse the judgment, as amended, insofar as it *347 addresses the issues of custody and child support, and we remand the cause for the trial court to clarify its custody determination and to specify (1) whether it granted the parties joint legal custody of the child or granted the wife sole legal custody of the child, (2) whether it granted the parties joint physical custody of the child, and (3) whether it granted the husband visitation or custody every other week or weekend. See Arnold v. Arnold, 977 So.2d 501, 507 (Ala.Civ.App.2007)(reversing in part a divorce judgment and remanding the cause to the trial court to resolve a conflict in the judgment pertaining to noncovered medical expenses); Hall v. Hall, 895 So.2d 299, 305 (Ala.Civ.App.2004) (reversing a judgment in part and remanding the cause with instructions to the trial court to remove language from the judgment that was inconsistent with another provision in the judgment); and Shipp v. Shipp, 435 So.2d 1298, 1299 (Ala.Civ.App.1983)(concluding that a provision of a judgment contained “ambiguities and uncertainty” and remanding the cause for the trial court to remove the ambiguity).
We note for the trial court’s consideration in amending its judgment that, if, on remand, the trial court clarifies that its intent is to grant the wife sole physical custody and grant the husband visitation every other weekend and every other fifth weekend, the record does not contain any evidence or other basis to support a determination that such visitation is in excess of what is generally granted in conjunction with an order granting sole physical custody to the other parent.
The wife also contends that the trial court failed to take into account income that the husband earned from his employment with the Alabama National Guard. There is no indication in the record, however, that either party introduced evidence at trial concerning the husband’s purported employment with the Alabama National Guard. Thus, no reversible error is established regarding the amount of income earned by the husband.
II. Findings of Fact
“ A divorce judgment that is based on evidence presented ore tenus is afforded a presumption of correctness. Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998). This presumption of correctness is based upon the trial court’s unique position to observe the parties and witnesses firsthand and to evaluate their demeanor and credibility. Brown, supra; Hall v. Mazzone, 486 So.2d 408 (Ala.1986). A judgment of the trial court based on its findings of facts will be reversed only where it is so unsupported by the evidence as to be plainly and palpably wrong. Brown, supra. However, there is no presumption of correctness in the trial court’s application of law to the facts. Gaston v. Ames, 514 So.2d 877 (Ala.1987).’
“Robinson v. Robinson, 795 So.2d 729, 732-33 (Ala.Civ.App.2001).”
Carnes v. Carnes, 82 So.3d 704, 710 (Ala.Civ.App.2011).
As noted above, in the Rule 52 order, the trial court found, among other things, that the husband and the wife had exchanged custody of the child every other week pursuant to the temporary order, that the husband had exercised visitation with the child as often as it was available to him, that the husband had hit the child with a belt, that the wife had hit the child with the handle of a spoon, that the wife had hit the child over the head with her purse, and that the child had had to sleep in a bed with the wife due to lack of accommodations. The wife contends that there was no evidence presented at trial to support those findings of fact. From our review of the record, we do not find support for those findings of fact.
*348 . Regarding the finding that the husband had “exercised as many periods of physical custody as he had available” to him under the temporary order, the husband testified as follows under questioning, from the wife’s attorney:
' “[Husband], when we were here in July, you asked this Court to award you custody of your daughter ...; is that correct?
“A. Yes, sir.
“Q. And the Judge ordered [in the temporary order] a week on, week off custody with you being the primary physical custodian; is that correct?
“A. Yes, sir.
“Q. But you haven’t exercised that custodial time, have you?
■•■“A. 'No; sir.
“Q. ’Instead, you’ve left [the child] with [the wife]?
“A. Yes, sir.
“Q. You haven’t—so, would it be an accurate statement to say that you couldn’t be bothered to exercise your custodial time?
“A. It wouldn’t be fair to my daughter.”
Additionally, regarding the "trial court’s findings that both the wife and the husband committed acts of physical abuse, the record does not contain evidence that either party had hit the child. There is álso: no testimony to support the trial court’s finding that the child had to sleep in the wife’s bed due to lack of accommodations.
.We conclude that some of the trial court’s findings are, not supported by the evidence in the record. Because we are reversing the judgment, as amended, with regard .to the issues of custody and child support and remandirig the cause, we instruct the trial court to reconsider its judgment on remand without taking into account the aforementioned findings of fact that are not supported by the record.
III. Attorney Fees
In light of our decision to reverse the trial court’s judgment on the issues of custody and child support and because the judgment (including the award of attorney fees) could change upon the trial court’s reconsideration of those issues on remand, we pretermit .discussion of the wife’s argument regarding the trial court’s award of attorney fees to the husband in the amount of $5,000.

Conclusion

For the foregoing reasons, we reverse the judgment, as amended, insofar as it addresses the issues of custody and child support, and we remand the cause to the trial court to reconsider the custody and child-support provisions of the judgment and to reconsider the judgment without taking ■ into consideration the erroneous findings of fact that are unsupported by the evidence
The wife’s request for an award of attorney fees on appeal is denied.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
THOMAS, J., concurs in the result, without writing.

. We deem the second postjudgment motion, which was filed within the 30-day period provided in Rule 59, Ala. R. Civ. P., to be an amendment to the first postjudgment motion. Thus, the second postjudgment motion "trigger[ed] a new 90-day jurisdictional period” pursuant to Rule 59.1 for the trial court to rule. Roden v. Roden, 937 So.2d 83, 85 (Ala.Civ.App.2006). Accordingly, the trial court’s October 21, 2015, order amending the judgment was within the 90-day jurisdictional period.

. Section 30-3-151, Ala.Code 1975, a part of Alabama’s joint-custody statutes, Ala.Code 1975, §§ 30-3-150 through -157, does not contain a definition for the terms “shared custody” or "primaiy physical custody.” "As we have explained before, the proper terms for custody judgments are contained in Ala. Code 1975, § 30-3-151, which became effective on January 1, 1997. See Harris v. Harris, 775 So.2d 213, 214 (Ala.Civ.App.1999).” Smith v. Smith, 887 So.2d 257, 261 (Ala.Civ.App.2003). As this court stated in Richardson v. Fotheringham, 950 So.2d 339, 341 (Ala.Civ.App.2006):
"The trial court's divorce judgment awarded the parties 'joint custody,’ yet it awarded the father ‘primary physical custody.’ 'These terms have been commonly employed by the bench and bar; however, in light of the definitions of the types of custody set out in the joint-custody statute, those older terms are unclear and ... serve only to confuse the issue of custody. Harris v. Harris, 775 So.2d 213, 214 (Ala.Civ.App.1999). Using the proper terms set out in the joint-custody statute, § 30-3-151, Ala. Code 1975, the divorce judgment can be construed only one way—that is, it awards the father sole physical custody and the mother and the father joint legal custody. See Harris, 775 So.2d at 214.”